

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. VI-14-001

TOWN OF GORHAM,

    Petitioner

v.

JOHN PAPI,

    Respondent

DECISION AND ORDER

STATE OF MAINE
Cumberland, ss, Clerk's Office

MAR 27 2015

RECEIVED

## BEFORE THE COURT

This matter comes before the court to enforce the Town's citation of John Papi ("Papi") with violating the Solid Waste Flow Control Ordinance ("Ordinance"). The Ordinance requires an individual or business to obtain an annual license from the Town before collecting, recycling, or hauling any solid waste generated within the boundaries of the Town. The license applicant must provide certain specified information, including proof of liability insurance, and must also pay an annual license fee. The penalty for violating the Ordinance is a $3,000 fine for the first violation and a $5,000 fine for any subsequent violations, plus costs and attorney's fees incurred in enforcing the Ordinance. Papi contends that the Town selectively enforces the Ordinance against him.

## BACKGROUND AND PROCEDURAL HISTORY

On January 28, 2014, Gorham Police Sgt. Dan Young cited Papi for violating the Ordinance when Papi was caught in the process of loading solid waste into his truck from a dumpster at Cook's Hardware Store in Gorham. At the time he was cited by Gorham Police Sgt. Young, Papi was not licensed under the Ordinance.

This is not the first time that Papi violated the Ordinance by hauling without a license. *See Town of Gorham v John Papi*, CV-98-69. On October 16, 1998, the Superior Court granted summary judgment in favor of the Town, ordering Papi to pay a $3,000 fine plus $1,544.68 in attorney's fees, and enjoining him from hauling any solid waste generated in the Town without obtaining the required license. Papi did not pay the judgment entered in 1998. In this action, the Town asks the court to order payment of that judgment together with post-judgment interest, as part of the remedy in this case.

There is no factual dispute that Papi was collecting municipal solid waste in the Town without a license. Rather, Papi argues that he is the victim of selective enforcement, in violation of his right to equal protection under the law.

**DISCUSSION**

1. Selective Prosecution/Enforcement

Under the Equal Protection Clause of the United States Constitution, the state cannot "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Maine Constitution provides the same protections. *Bangs v. Town of Wells*, 2000 ME 186, ¶ 9 n.4, 760 A. 2d 632 (citing both federal and state constitutional provisions).

However,

> There is no right under the Constitution to have a law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) you are not as culpable as some others who have gone unpunished. The law does not need to be enforced everywhere to be legitimately enforced somewhere . . . .

*Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1056 (6th Cir. 1996) (citing *Wayte v. United States*, 470 U.S. 598, 607 (1985)); *cf. Williamson v. Lee Optical Co.*, 348 U.S. 483, 487-

2

88 (1955) (noting that a "law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.").

To make out a defense of selective prosecution or enforcement, a defendant must establish the following two elements:

(1) the person, compared with others similarly situated, was selectively treated; and

(2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Oyler v. Boles*, 368 U.S. 448, 456 (1962); *Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen*, 878 F.2d 16, 21 (1st Cir. 1989); *State v. Heald*, 382 A.2d 290, 301 (Me. 1978).

For the first element, there must be a showing of discriminatory intent. The challenged action must have a discriminatory effect and must be motivated by a discriminatory purpose. *Polk v. Town of Lubec*, 2000 ME 152, ¶ 14, 756 A.2d 510. As for the second element, in the absence of any evidence of racial, religious or speech discrimination, defendant must produce evidence showing that the Town acted on a "bad faith intent to injure" the defendant. *E. Perry Iron & Metal Co. v. City of Portland*, 2008 ME 10, ¶ 30, 941 A.2d 457. In order to successfully make out a claim that he is a "class of one," defendant must show that he "has been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 104 (1st Cir. 2002) (quotation and citation omitted). It is not sufficient to merely show that there are other individuals who are also violating

3

the law. *B & B Coastal Enters., Inc. v. Town of Kennebunk*, 276 F. Supp. 2d 155, 172 (D. Me. 2003). This is a heavy burden for defendant to meet: he must show that (1) he was selectively treated; and (2) that the selective treatment was based on impermissible considerations.

### 2. Defendant's Showing

The officer who summonsed Papi had not heard of Papi before the day that he issued the summons. Sgt. Young had not heard any discussion that Papi was a target of the Town's enforcement actions. Sgt. Young testified that he never singled out anyone in the enforcement of an ordinance. He also had never cited anyone else for trash hauling. The Chief of Police directed him to the hardware to store. The Chief observed Papi pull in to the hardware store to pick up the trash and called the Clerk's Office to see whether he was licensed. The Chief was aware that Papi might not be licensed. When the Clerk confirmed that Papi was not licensed, the Chief called Sgt. Young and directed him to the hardware store to summons Papi for the violation. The Chief was not aware of any other trash hauler in Town that had been cited.

According to the Town Manager, David Cole ("Cole"), he spoke with Papi about the need to control the Town's waste in an effort to get him to get licensed. He said most of the other haulers eventually come to be licensed and he was not aware of another hauler who did not get licensed. Papi has come in most years and paid the fees until recently. Papi contends that the Town's $700 fee is too high. Cole admits that the Town's fee is higher than some, and some other towns' fees are lower or consistent with the Town's. The Town Manager periodically checks the revenue sources and if he is made aware that someone

4

has not registered, he calls them in and if there is no response, he sends a notice to the Police Department.

The Town Manager was aware Papi had not paid the earlier fine but in the intervening years did not seek to enforce it because Papi was obeying the Ordinance. In 2013, The Town Manager became aware that Papi had not obtained a license. After repeated notices, he asked the Police Chief to cite him the next time they found him operating without a license. It was after this that the Police Chief observed Papi hauling waste without a license from the hardware store and the Chief directed Police Sgt. Young to issue a citation.

Papi established that there are other haulers that are not licensed. When asked about another hauler, R.W. Hendrick, who hauls residential waste for the Town, the Town Manager stated the Town has a $450,000 contract with Hendrick and the Town relies on the contract and does not require an annual license from Hendrick. Additionally, the Town does not enforce the ordinance against construction sites even though there is no exception for construction sites. Papi was able to identify mistakes in the Town's website with regard to who is and is not a licensed hauler. Unfortunately the website was out of date, for example, it listed Papi as a licensed hauler when he was not. The court concludes that the website is not a reliable source of licensed haulers in the Town. Nevertheless, Papi offered unrebutted evidence that it is more likely than not that there are other haulers who are not licensed. He testified he gave the names of some other unlicensed haulers to two clerks in the Town's office but nothing had been done to follow up on his report of unlicensed haulers.

Papi does not allege religion, race, disability or any other basis for his claim of unequal treatment. Papi simply wants the court to level the playing field

5

and to make the community business friendly for competition, but he cannot explain why he did not pay the 1998 fine except he did not believe he got a hearing in that earlier case.[1]

Although Papi established that he is the only waste hauler who was cited under the Ordinance, and he is also the only hauler who was previously fined and failed to pay the fine. It is not sufficient for Papi to show that there are other individuals who are also violating the Ordinance. The Town overlooked his failure to comply with the 1998 Court Order because he was registering each year. When the Town finally cited him in 2014, it was because he had not obtained a license for that year and he had not complied with the prior Order. These factors provide a rational basis for the Town's enforcement of the Ordinance against him. In the absence of a showing that the Town acted in malicious or bad faith to injure him, Papi has failed to prove that the Town of Gorham selectively prosecuted him.

## CONCLUSION

Papi was not licensed pursuant to the Town's Ordinance on January 28, 2014 when he was observed hauling waste from the hardware store. He has not complied with the Court's Order of 1998. Accordingly, the Court **ORDERS** the defendant to pay a fine of $5,000 by cash or bank check made payable to the Town of Gorham within 30 days of this Order; to immediately cease and desist from hauling any solid waste generated in Gorham without having first obtained

---

[1] That case was decided on summary judgment, which did not require a hearing.

[2] The court does not have the authority to reduce the fine because the Ordinance provides that a violator "shall be punished by a fine of not less than Three Thousand Dollars ($3,000) for the first violation and not less than Five Thousand Dollars ($5,000) for the second violation and subsequent violations . . . ." Article VII of the Town of Gorham Solid Waste Flow Control Ordinance.

6

the required municipal licenses; and to pay Plaintiff its reasonable costs and attorney's fees. The Town's attorney shall file an attorney's fee affidavit within 21 days of this Order together with a proposed order pertaining to the payment of fees. The Court further ORDERS the defendant to pay the fines and fees due under the Court's 1998 Order in the amount of $4,544.68 by cash or bank check made payable to the Town of Gorham within 30 days of this Order. Failure to comply or pay in accordance with this order could result in a finding of contempt and sanctions, including incarceration.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED: March 27, 2015

_____
Joyce A. Wheeler, Justice

Plaintiff Town-William Dale Esq
Defendant Papi-Brian Willing Esq

7